IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION


JULIET VALENCIA,

    Plaintiff,

vs.                                                                   Case No. 5:11cv126-WCS

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

_____/

## MEMORANDUM OPINION

This is a social security case referred to me upon consent of the parties and reference by District Judge Hinkle. Doc. 15. It is concluded that the decision of the Commissioner should be affirmed.

**Procedural status of the case**

Plaintiff, Juliet Valencia, applied for disability insurance benefits. Her last date of insured status for disability benefits was December 31, 2011. Plaintiff alleges disability due to morbid obesity, a history of major depression and bipolar disorder, cervical disc disease, and low back pain secondary to mild degenerative joint disease at L4-S1, with

onset on September 18, 2006.  Plaintiff was 43 years of age on the alleged onset date, has two years of college, and has past relevant work as a cashier and warranty clerk in a car dealership.  The Administrative Law Judge found that Plaintiff had the residual functional capacity to do a limited range of light work, can still perform her past relevant work as a warranty clerk, and thus was not disabled.

**Legal standards guiding judicial review**

This court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles.  Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).  "The Commissioner's factual findings are conclusive if supported by substantial evidence."  Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002).[1]

---

[1] "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it."  Phillips v. Barnhart, 357 F.3d 1232, 1240, n. 8 (11th Cir. 2004) (citations omitted).  The court must give "substantial deference to the Commissioner's decision."  Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005).  "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ.  A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ."  Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983).  "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.' "  Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A). A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Both the "impairment" and the "inability" must be expected to last not less than 12 months. Barnhart v. Walton, 535 U.S. 212, 122 S.Ct. 1265, 1272, 152 L.Ed.2d 330 (2002).

The Commissioner analyzes a claim in five steps. 20 C.F.R. § 404.1520(a)-(f):

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairments?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits. A positive finding at step three results in approval of the application for benefits. At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work. If the claimant carries this burden, the burden shifts to the Commissioner at step five to establish that

despite the claimant's impairments, the claimant is able to perform other work in the national economy.  Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

**Legal analysis**[2]

> **Whether the ALJ gave sufficient reasons supported by substantial evidence to discount the opinion of the treating physician**

The opinion of a claimant's treating physician must be accorded considerable weight by the Commissioner unless good cause is shown to the contrary.  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); Winschel v. Commissioner of Social Sec., 631 F.3d 1176, 1179 (11th Cir. 2011).  This is so because treating physicians:

> are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

---

[2] Descriptions of the purpose and effects of prescribed drugs are from PHYSICIANS' DESK REFERENCE, as available to the court on Westlaw, or PDRhealth™, PHYSICIANS' DESKTOP REFERENCE, found at http://www.pdrhealth.com/drugs/drugs-index.aspx, or PUBMED HEALTH, found at http://www.ncbi.nlm.nih.gov/pubmedhealth/, or EVERYDAYHEALTH, found at http://www.everydayhealth.com/drugs.  Information about medical terms and prescription drugs come from MEDLINE PLUS (MERRIAM-WEBSTER), found at: www.nlm.nih.gov/medlineplus/mplusdictionary.htm or NATIONAL INSTITUTES OF HEALTH, found at: http://health.nih.gov.  Social Security Rulings can be found at: http://www.ssa.gov/OP_Home/rulings/rulfind1.html.    The pages at these websites are not attached to this report and recommendation as the information is relatively well-settled, the precise definitions are not at issue in this case, and the definitions are not likely to be in dispute.

Case No. 5:11cv126-WCS

20 C.F.R. § 404.1527(d)(2). Important to the determination of whether there is a "detailed, longitudinal picture" of impairments is the length of the treatment relationship, the frequency of examination, the extent of the knowledge of the treating source as shown by the extent of examinations and testing, the evidence and explanation presented by the treating source to support his or her opinion, the consistency of the opinion with the record as a whole, and whether the treating source is a specialist with respect to the particular medical issues. 20 C.F.R. § 404.1527(d)(2)-(5).

The reasons for giving little weight to the opinion of a treating physician must be supported by substantial evidence, Marbury v. Sullivan, 957 F.2d 837, 841 (11th Cir. 1992), and must be clearly articulated. Phillips v. Barnhart, 357 F.3d 1232, 1241 (11th Cir. 2004). "The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986). This circuit finds good cause to afford less weight to the opinion of a treating physician "when the: (1) treating physician's opinion is not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." Winschel, 631 F.3d at 1179; Phillips v. Barnhart, 357 F.3d 1232, 1240-1241(11th Cir. 2004); Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991) ("The treating physician's report may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory."). *See also*, Crawford v. Commissioner Of Social Security, 363 F.3d 1155, 1159 (11th Cir. 2004)

(finding good reasons articulated by the ALJ to discount the treating physician's opinion).

> A medical source opinion that an individual is "disabled" or "unable to work," has an impairment(s) that meets or is equivalent in severity to the requirements of a listing, has a particular RFC, or that concerns the application of vocational factors, is an opinion on an issue reserved to the Commissioner.  Every such opinion must still be considered in adjudicating a disability claim; however, the adjudicator will not give any special significance to the opinion because of its source.  See SSR 96-5p, "Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner."

SSR 96-8p, footnote 8.

Plaintiff was treated for back pain at the White-Wilson Medical Center, P.A., for a number of years by Gilbert L. Vigo, M.D., and others.  On May 20, 2008, Dr. Vigo wrote: "Patient is unable to work [due] to severe radiculopathy/fibromyalgia."  R. 399.

The Administrative Law Judge gave "limited weight" to Dr. Vigo's opinion.  He reasoned that it was:

> not supported by the objective evidence in the hearing record.  The doctor's own treatment notes fail to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact so disabled.  Office progress notes indicate the claimant had only occasional radiation of pain into the right lower extremity and Dr. Vigo's reports did not even include an assessment for fibromyalgia at the time this opinion was given.  As Dr. Hancock testified, the diagnosis of fibromyalgia just seemed to appear out of nowhere.

R. 22.

Earlier in the opinion, the ALJ had found that the "objective medical evidence and course of treatment" was "not consistent with the claimant's allegations of total disability."  R. 19.  He concluded that "the totality of the objective medical findings do not support the claimant's subjective complaints of severe and debilitating pain."  R. 20.

In his discussion of the medical evidence, the ALJ noted that Plaintiff had had cervical surgery at C4-C5 in November, 2006, and that by March, 2007, Plaintiff had "complete resolution of her cervical symptoms." R. 19. The ALJ also found:

> In December 2006, following complaints of chronic low back pain, a CT scan of the lumbar spine revealed a slight retrolisthesis and bulge at L5-S1 resulting in minimal deformity of the thecal sac and no canal stenosis. Facet hypertrophy was present at L4-5. In January 2007, a physical examination showed the claimant had good ankle jerk on the right side and good toe walking with no sensory loss, which indicated no S-1 radiculopathy. A course of physical therapy was prescribed; however, in March 2007, the claimant declined physical therapy consultation. A June 2007 MRI of the lumbar spine revealed degenerative disc disease at L5-S1 with annular bulging and minimal narrowing of the lateral recesses. A L4-5, facet hypertrophy with mild annular bulging was noted. The claimant was provided injection therapy and medication adjustments for pain relief (Exhibit 14F). In October 2007, it was noted that the claimant's pain was substantially better and that she had good response to medication changes (Exhibit 10F). In 2008, treatment records consistently indicated the claimant's pain was very well controlled. The claimant was noted to experience orthostatic hypotension secondary to the use of Neurontin and, following a dosage adjustment, the record does not document any further such episodes (Exhibit 17F).

R. 19. The ALJ further determined that Plaintiff had received narcotic pain medications and limited epidural steroid injections, and those treatments "had been generally successful in controlling her pain symptoms." R. 20. He found that the records did not corroborate her complaints of medication side effects. *Id.* Finally, the ALJ noted that Plaintiff had failed to attend physical therapy as prescribed. *Id.*

The ALJ also relied upon the testimony of Charles I. Hancock, M.D., a board certified orthopedic surgeon, who had reviewed Plaintiff's medical records. R. 19-20. Although Dr. Hancock found that the lumbar spinal MRI showed facet degeneration and moderate disc bulging at L4-5, he found no significant neuroforaminal narrowing, disc

herniation, spinal stenosis, or actual compression of the nerve root.  *Id.*  Dr. Hancock observed negative results from straight leg raising tests, and no signs of any reflex, motor, or sensory loss.  R. 20.  Finally, the ALJ observed that Dr. Hancock was skeptical of the diagnosis of fibromyalgia because the records did not identify 11 of the 18 diagnostic trigger points for fibromyalgia.  *Id.*

The evidence relevant to these findings is the following.  On December 1, 2006, the surgeon, Dr. Levine, found that Plaintiff was doing well after the cervical surgery and her strength was good.  R. 418.  He noted that she complained of a lot of back pain, with radiation down to her knees, but on examination, he found that she had good strength in her leg, her knee jerks were intact and he said that she had no obvious radicular sensory loss.  *Id.*

On December 6, 2006, Plaintiff had a lower back MRI.  R. 416.  This revealed a transitional lower lumbar segment, with the lowest fully developed level at L5-S1.  *Id.*  It also revealed "slight retrolisthesis and prominent bulge or very small broad based central disc protrusion resulting in minimal deformity of the thecal sac" at L5-S1, but with no canal stenosis.  *Id.*  Finally, there was facet hypertrophy at L4-L5.  *Id.*

On January 9, 2007, Gerardo Cruz, physician's assistant, saw Plaintiff at the White-Wilson Medical Center.  R. 412, 414.  Her chief complaint was low back pain.  R. 412.  A recent gastric bypass with significant weight loss was noted.  *Id.*  Her upper back was tender to palpation, but she had good range of motion in her extremities.  R. 414.  A prescription for Lortab[3] was continued.  *Id.*

---

[3] Lortab is one of the brand names for hydrocodone.  PHYSICIANS' DESK REFERENCE (2004), p. 3233.  Hydrocodone is a semisynthetic narcotic derivative of codeine having

On January 18, 2007, Dr. Levine found that Plaintiff's neck was healing well, but she complained of "some low back pain with some radiation into the leg on the right side." R. 411. Dr. Levine noted that a CT scan showed "a tiny bit of retrolisthesis at 5-1 and collapses of the L5-S1 disk space." *Id.* He said that he did not believe that he saw any disk herniation, but said that "there is a slight density on the right side of the canal that could possibly be a small lateral disk herniation." *Id.* Again, he found that Plaintiff had "good ankle jerk on the right side and good toe walking and no sensory loss, indicating no S1 radiculopathy." *Id.* He referred Plaintiff to a physical therapist "to do low back rehabilitation." *Id.*

On March 6, 2007, physician's assistant Cruz saw Plaintiff at the White-Wilson Medical Center. R. 407-408. Her *upper* back was tender with palpation, but she had good range of motion in her extremities. R. 408. Plaintiff declined physical therapy. *Id.*

On June 7, 2007, Plaintiff had another MRI of her lumbar spine. R. 406. The impression was degenerative disc disease at L5-S1 with annular bulging and minimal narrowing of the lateral recesses, and facet hypertrophy with mild annular bulging at L4-L5. *Id.*

On July 9, 2007, she again was seen by PA Cruz. R. 404-405. Plaintiff's chief complaints were skin lesions she wanted removed and low back pain. R. 404. She was found to have good range of motion of her extremities, but her right buttock was tender. R. 404-405.

---

sedative and analgesic effects more powerful than those of codeine. DORLAND'S MEDICAL DICTIONARY FOR HEALTHCARE CONSUMERS.

Case No. 5:11cv126-WCS

On July 27, 2007, PA Cruz again saw Plaintiff. R. 402-403. Fibromyalgia was not on the problem list. R. 402. Plaintiff's chief complaint was exacerbation of low back pain after lifting a chair. *Id.* Plaintiff reported some radiculopathy into her buttocks and that Lortab was not helping. *Id.* On examination, PA Cruz found tenderness in Plaintiff's lower back at belt level and "several trigger points." *Id.* He thought that Plaintiff's lower back pain was moderate to severe, not well controlled. R. 403. An analgesic injection was provided with approval from Dr. Vigo. *Id.*

On November 21, 2007, Dr. Vigo saw Plaintiff. R. 400-401. He found that the cervical surgery had relieved her symptoms. R. 400. Plaintiff continued to report "significant pain in the right buttock area, deep and most consistent with piriformis syndrome[4] which is now intractable." *Id.* She reported that the pain had become "almost unbearable with no radicular symptoms." *Id.* On examination, however, Dr. Vigo found only "slight right hip flexor tenderness," with "some tenderness upon medial rotation of the hip flexors as well as extension." *Id.* Plaintiff had full range of motion in her extremities.[5] *Id.* Dr. Vigo's diagnosis was "probable piriformis muscle tenderness." R. 401. Dr. Vigo did not mention fibromyalgia as a diagnosis. *Id.* An MRI was ordered, and Plaintiff was referred to Dr. Levine for a surgical consult. *Id.*

On May 20, 2008, Dr. Vigo expressed his opinion that Plaintiff is totally disabled and unable to work due to fibromyalgia and severe radiculopathy. R. 399.

---

[4] Piriformis syndrome is sciatica caused by compression or irritation of the sciatic nerve by the piriformis muscle and is characterized by pain, tingling, and numbness in the buttocks often extending down the leg. MEDLINE PLUS (MERRIAM-WEBSTER).

[5] The notation is "FROM" in the extremities. R. 400.

On July 1, 2008, Plaintiff was seen for pain management at the White-Wilson Medical Center by Chirag Patel.  R. 512.  Plaintiff said that she had chronic lower back pain and pain in all of her joints, and that the pain had gradually grown worse.  *Id.*  She said that her pain was aggravated by lying down, traveling, coughing, sneezing, lifting, bending over, climbing stairs, weather changes, or straightening up, and that the pain was the same whether standing, sitting, or walking.  *Id.*  She said she had had good relief of her pain with Flexeril,[6] Robaxin,[7] Percocet,[8] and Duragesic patches.[9]  *Id.*  Dr. Patel noted from the June 7, 2007, MRI that the "annular bulging at L5-S1 does extend to the ventral surfaces of the S1 nerve roots on the lateral recesses."  R. 513.  On examination, Dr. Patel found tenderness to palpation on the midline of Plaintiff's lower spine at approximately L4 through S1.  R. 514.  She had increased pain with lumbar flexion, and mild pain with lumbar extension and rotation.  *Id.*  She had pain over the right sacroiliac joint, but she had full range of motion of her lumbar spine.  *Id.*  The

---

[6] Flexeril is a muscle relaxant prescribed to relieve muscle spasms resulting from injuries such as sprains, strains, or pulls.  Combined with rest and physical therapy, Flexeril provides relief of muscular stiffness and pain.  PDRhealth™, PHYSICIANS' DESKTOP REFERENCE.

[7] Robaxin is prescribed, along with rest, physical therapy, and other measures, for the relief of pain due to severe muscular injuries, sprains, and strains.  PDRhealth™, PHYSICIANS' DESKTOP REFERENCE.

[8] Percocet, a narcotic analgesic, is used to treat moderate to moderately severe pain.  It contains two drugs – acetaminophen and oxycodone.  Acetaminophen is used to reduce both pain and fever.  Oxycodone, a narcotic analgesic, is used for its calming effect and for pain.  PDRhealth™, PHYSICIANS' DESKTOP REFERENCE.

[9] A Duragesic patch is a strong opioid narcotic pain medicatiton used for the relief of persistent moderate-to-severe chronic (long-term) pain.  PDRhealth™, PHYSICIANS' DESKTOP REFERENCE.

straight leg raising test was negative for pain bilaterally. *Id.* Her motor strength in her lower extremities was 5/5, undiminished. *Id.* Sensation and reflexes were intact. *Id.* Faber and Patrick's tests were negative. *Id.* Dr. Patel's impression was a history of chronic lower back pain and fibromyalgia. R. 515. Dr. Patel thought she might benefit from an epidural steroid injection, but Plaintiff then had a staph infection, and the procedure was to be scheduled after the staph infection had been resolved. *Id.*

On July 9, 2008, Plaintiff was seen again by Dr. Vigo. R. 510-511. He said she had "diffuse fibromyalgia, hypothroidism, chronic degenerative joint disease of the back" requiring "high doses of Fentanyl for control of her pain." R. 510. Plaintiff told Dr. Vigo that her pain was "very well controlled" with her current medication. *Id.* Dr. Vigo's assessment was orthostatic hypotension secondary to taking Neurontin (he decreased the dosage), and depression, controlled. R. 511.

On September 8, 2008, PA Cruz saw Plaintiff at the White-Wilson Medical Center. R. 506-507. The "problem list," Plaintiff's subjective complaints and medical history, included recurrent low back pain, fatigue, fibromyalgia, and other problems. R. 506. He noted that her fibromyalgia symptoms had improved and her chronic pain control was good. *Id.* Plaintiff was tender paraspinally and along her lower back at her belt level, but she had good range of motion in her extremities. R. 507. Plaintiff declined a neurology consult. *Id.*

On September 23, 2008, Dr. Vigo again saw Plaintiff for a cat bite. R. 504-505. Dr. Vigo said that her fibromyalgia was "stable." R. 504. He added "chronic fatigue

syndrome" to the list of diagnoses and found it to be stable. *Id*. Her other problems were also stable. R. 507.

On November 21, 2008, Plaintiff again saw PA Cruz. R. 502-503. He noted that her fibromyalgia symptoms were improved, her chronic pain control was good, and her depression had now improved and was controlled. R. 502. He again found that Plaintiff was tender in the lower back but had good range of motion. R. 503.

Dr. Hancock testified at the evidentiary hearing. R. 29. He reviewed the medical record. R. 30. He said that it was possible that Plaintiff's lower back problems "go back to her obesity." R. 31. He noted that the records reflected that on several occasions, Plaintiff reported severe right buttock pain, and that she had one trial of an epidural steroid injection. R. 31-32. He said:

> I didn't find any significant neurologic deficits, no report of motor or sensory loss, and the impressions varied from bulging disc, to piriformis syndrome, to piriformis tenderness, to mild fasciitis, to fibromyalgia. I did not find any instance at any place in the record where the fibromyalgia criteria of tender points, 11 of 18 tender points were outlined. And it just appeared, seemed like the diagnosis of fibromyalgia just appeared. Can't find any criteria by which it was diagnosed. She did have MRI that showed degenerative facets in the L4-5 region, and some moderate bulging, but no neural foraminal encroachment, and no spinal stenosis, and no foraminal stenosis. Reported that she did have what is known as a transitional vertebra. "That's a situation where it looks like a lumbar vertebra on one side, say on the left side, and the sacral vertebra on the right side, and the disc at that level is always very narrow, and this case, it's also, like what I was reported, is narrow. But no discrete or focal herniation, although there was reported to be annular bulging. She doesn't have the typical radicular-type symptoms, and straight leg raising was reported as negative. . . . She did lose over 100 pounds following her [gastric bypass] surgery, and that's commendable. Still reporting pain in the low back and the buttock on the right side. . . .

R. 32.  Dr. Hancock thought that the more recent residual functional capacity assessment by the state agency, for light work, "six/six stand and walk, unlimited postural activities," was the more reasonable one "in view of her obesity and the transitional vertebra, and the complaints of pain."  R. 33.  He noted that Plaintiff's neck problems had resolved after surgery.  R. 35.  He agreed that Plaintiff could "sit, stand, and walk for at least six hours in an eight hour day."  *Id.*

Dr. Hancock explained that the piriformis is one of the muscles about the hip, and sometimes the sciatic nerve goes under the piriformis, or over it, or sometimes through it, but when it goes under, in certain positions, pressure is placed on the sciatic nerve, causing discrete, "very focal" pain "when you press on it."  R. 34.  He said that "they didn't report any of the testing that you would do to see if it was piriformis tightness or syndrome, and we have no way of determining the nerve, whether it passes over, under, or through, without an MRI or actually opening the joint and looking at it."  *Id.*  He did not think that there were enough symptoms to warrant doing that.  R. 35.  He also did not agree with calling her pain sciatica, which radiates down the sciatic nerve, since she had pain localized in her buttock.  R. 38.

In summary, the reasons given by the ALJ to discount the opinion of the treating physician, Dr. Vigo, are sufficient.  There was no definitive diagnosis of fibromyalgia. "Fibromyalgia is a rheumatic disease and the relevant specialist is a rheumatologist." Sarchet v. Chater, 78 F.3d 305, 307 (7th Cir. 1996).  The signs of fibromyalgia, according to American College of Rheumatology guidelines, are primarily tender points on the body.  Green-Younger v. Barnhart, 335 F.3d 99, 107 (2nd Cir. 2003)

("Green-Younger exhibited the clinical signs and symptoms to support a fibromyalgia diagnosis under the American College of Rheumatology (ACR) guidelines, including primarily widespread pain in all four quadrants of the body and at least 11 of the 18 specified tender points on the body.").  Further, by late 2008, it was reported that Plaintiff's symptoms, however named, were under control.  Her pain medications were working.  If she had fibromyalgia, it was stable.  Most of the objective testing for neurological impairment (muscle wasting, strength, straight leg raising) had negative results.  These are sufficient reasons, supported by substantial evidence in the record, to discount Dr. Vigo's opinion that Plaintiff is totally disabled.

### Whether the ALJ erred in finding that Plaintiff had the ability to work more than six hours a day

The Administrative Law Judge determined that Plaintiff had the ability to "sit, stand or walk for at least six hours of an eight hour workday."  R. 17.  This determination is supported by the testimony of Dr. Hancock, discussed above, and Clarence Louis, M.D., the state agency physician's determination of residual functional capacity based upon review of the medical records.  R. 350, 356.

Plaintiff argues that this means that Plaintiff can sit, stand, or walk in combination only six hours a day.  That is unpersuasive.  It is uniformly understood that these findings are additive, that a person who can sit, stand, and walk for six hours a day can do all of these activities during an eight hour day so long as each one does not exceed six hours.  *E.g.*, Macia v. Bowen, 829 F.2d 1009, 1011 (11th Cir. 1987) (ability to sit or stand and walk about six hours a day is an ability to do sedentary work).

Case 5:11-cv-00126-WCS   Document 17   Filed 02/02/12   Page 16 of 16

Page 16 of 16

**Conclusion**

Considering the record as a whole, the findings of the Administrative Law Judge were based upon substantial evidence in the record and correctly followed the law.

Accordingly, the decision of the Commissioner to deny Plaintiff's application for Social Security benefits is **AFFIRMED**, and the Clerk is **DIRECTED** to enter judgment in favor of Defendant.

**IN CHAMBERS** at Tallahassee, Florida, on February 2, 2011.

        s/    William C. Sherrill, Jr.
        **WILLIAM C. SHERRILL, JR.**
        **UNITED STATES MAGISTRATE JUDGE**